MINERVA BROWN, Respondent, v. PARAMOUNT PUBLIX CORPORATION, Appellant.

Third Department, March 22, 1934.

*Austin C. Keough* [*Louis Phillips* of counsel], for the appellant.

*Searl & McElroy* [*Clifford H. Searl* of counsel], for the respondent.

BLISS, J. The complaint is laid in libel. The appeal here is from so much of an order of the Special Term as denies defendant's motion to dismiss the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The salient allegations of the complaint are as follows:

One Grace Brown, the daughter of the plaintiff, during the year 1906 met her death at Big Moose lake in the county of Herkimer, N. Y. One Chester Gillette was indicted, tried, convicted and executed for her murder. (See *People* v. *Gillette*, 191 N. Y. 107.)

The defendant has caused to be produced for sale or distribution to and exhibition by moving picture houses throughout the country a talking motion picture production under the title of "An American Tragedy," in which it has caused to be portrayed by actors, scenes, characteristics and otherwise what purports to be a reproduction of the lives of Chester Gillette, Grace Brown and their families by the similarity of the characters, locations, scenes and incidents so closely associated with the actual incidents of the life of said Chester Gillette and Grace Brown as to induce the public to believe that the same portrayed the conditions surrounding the lives of said characters. The defendant caused these films to be sent generally throughout the State of New York and especially in the locality where the plaintiff resides. After setting forth the plaintiff's good character as well as that of her husband, their respectability and the proper rearing and education of their daughter, the complaint then alleges: " but that disregarding the character, appearance, reputation and good name of the plaintiff, the defendant willfully, wrongfully and maliciously, through the manufacture, use, lease and exhibition of said films and pictures, purporting of and concerning the plaintiff, the following false, untrue, slanderous, libelous and defamatory matter, to wit: that the plaintiff was an illiterate, unkempt, slovenly, neglectful and low-grade person; that she was the wife of a mean, illiterate, unkempt, lazy, low-type or degenerate person; that she had neglected her daughter, the said Grace Brown, both educationally and morally, or had compelled her, through lack of care, to seek her own livelihood as a mere child; that she had permitted her said daughter, Grace Brown, to carry on clandestine relations with Chester Gillette, or others, and so depicted the plaintiff, by the manner of said pictures and films, as to render the plaintiff an object of contempt and ridicule among her friends, neighbors, and those who knew her or knew of her; and that the references and allusions to the plaintiff were understood by her acquaintances and friends, and by the public generally, to apply to her; that by such allusions, innuendo and intimation, plaintiff was made therein to appear as poor-white-trash, and a disreputable, untidy product of the hills, without decent care for her daughter and as contributing to the condition in which her daughter found herself; and that a copy of said production, as exhibited to the public generally is hereby referred to, as to all of the details, references and allusions therein contained, and made a part of this complaint."

The appellant first contends that the complaint is defective in that it does not plead the actual words, scenes and incidents of the the talking motion picture claimed to be libelous, but pleads only

in generalities the plaintiff's impression of the import, tenor and effect of what is contained in the pictures.

The appellant is quite correct in its contention that the general rule of pleading applicable to a complaint in libel is that the libelous words must themselves be actually set forth. The article as an entirety or the words themselves supposed to contain the libelous matter have been held to be an essential allegation. Aside from the necessity of alleging the actual libel so that the defendant might be apprised of the exact issue which he had to meet, such an allegation was held necessary to enable the court to determine whether the matter thus complained of was defamatory. The authorities on this proposition are numerous and there is neither time nor inclination to review them here. We are met here, however, with a novel and different situation. This is a comparatively new form of libel. It is not accomplished by the printed word, but by the somewhat recent invention of the talking motion picture. The exhibition is made to the public by means of projecting from a film onto a screen a series of a large number of still pictures so rapidly that the objects there displayed present the illusion of moving and acting as in everyday life. Accompanying these projected pictures are sounds mechanically reproduced and so synchronized that they appear to emanate from the objects on the screen. We are told that many of the scenes which upon the screen appear to be real are produced artificially and by illusion. Such a production may be libelous. (*Merle* v. *Sociological Research Film Corp.*, 166 App. Div. 376.) In the hands of a wrongdoer these devices have untold possibilities toward producing an effective libel. The mechanics of the production is cited merely to show the futility of asking that a plaintiff in such an action as this actually set forth in his complaint a detailed description of all of the scenes projected on the screen and the mechanical sounds accompanying them, be they words or otherwise. The plaintiff has here set forth a factual description of the objects portrayed on the screen, including the representation of herself. She alleges this description in the form of facts and conclusions of fact. It is sufficient that she has pleaded the ultimate and not the evidentiary facts. "Meticulous particularity in pleading the facts which must be shown by way of evidence to establish a cause of action is neither necessary nor proper." (*California Packing Corp.* v. *Kelly S. & D. Co.*, 228 N. Y. 49.) We hold that such description is a sufficient pleading of the alleged defamatory matter. We are reminded, in this connection, of the ancient libel committed by the burning of the plaintiff in effigy. Surely the plaintiff's declaration there did not contain the actual libel.

The appellant further contends that the talking motion picture does not contain any matter derogatory to the plaintiff, and that since its meaning is clear and unambiguous, the question of whether it is libelous is for the court and not for the jury. In determining the sufficiency of the complaint with respect to the alleged defamation, we merely substitute the plaintiff's factual description of the exhibition in place of the alleged libelous matter itself. Appellant sets up in its brief what it claims to be a short synopsis of the production. Such synopsis may not be here considered. We must base our decision on the allegations of the complaint alone. The production is defamatory of the plaintiff. One instance of such defamation may be cited. The complaint states that the plaintiff is untruthfully portrayed as having neglected her daughter morally and permitted her to carry on clandestine relations with Chester Gillette. Such conduct on the part of a mother is not accepted as proper among right-thinking people in the light of present social standards. Surely this portrayal would tend to expose the plaintiff to public contempt and aversion and would induce an evil opinion of her in the minds of right-thinking persons and deprive her of their friendly intercourse in society. To state that a mother has permitted her unmarried daughter to carry on clandestine relations with a man is defamatory. We must, therefore, reject this contention on the part of the appellant.

It is unnecessary that the plaintiff allege extrinsic facts showing the application to her of the defamatory matter. The complaint alleges that this exhibition was an alleged representation of her own life and that it was a misrepresentation. This is a sufficient compliance with rule 96 of the Rules of Civil Practice.

The portion of the order appealed from should be affirmed, with costs.

Hill, P. J., and Rhodes, J., concur; McNamee, J., dissents, with an opinion in which Crapser, J., concurs.

McNamee, J. (dissenting). The defendant is charged with libel of the plaintiff, in causing the production and exhibition before the public of a photoplay. The offensive matter of which the defendant is said to be guilty is set forth in paragraphs " 7 " and " 8 " of the complaint. There it is alleged generally that the defendant " intended to convey to the public that 'An American Tragedy ' represented the lives " of plaintiff's family, and that the same " was so accepted " by the public. The plaintiff alleges that she was represented as the mother of Grace Brown, one of the characters in the play and the victim of a murder, the trial of which is reported in *People* v. *Gillette* (191 N. Y. 107). The charge is that the picture

"*portrayed*" that plaintiff was "an illiterate, unkempt, slovenly, neglectful and low-grade person; that she was the wife of a mean, illiterate, unkempt, lazy, low-type or degenerate person; that she had neglected her daughter both * * * educationally and morally, or had compelled her, through lack of care, to seek her own livelihood as a mere child; that she had permitted her said daughter * * * to carry on clandestine relations with Chester Gillette, or others;" and that the photoplay "*so depicted* the plaintiff, by the manner of said pictures and films, as to render the plaintiff an object of contempt and ridicule among her friends, neighbors and those who knew her or knew of her; * * * that by such allusions, innuendo and intimation, plaintiff was *made therein to appear* as poor-white-trash, and a disreputable, untidy product of the hills, without decent care for her daughter and as contributing to the condition in which her daughter found herself." These allegations are followed by a statement that a copy of the picture "is hereby referred to * * * and made a part of this complaint." No language shown in the moving picture, if any, is quoted or referred to.

It is thus seen that the entire charge of the complaint is based upon the word "portrayed," or the synonymous expressions "depicted," and "made to appear." And following one or the other of these expressions in the complaint, the plaintiff sets down the conclusions which she deems justified by the portrayal. But she does not allege or describe any word, or act, or relation, or scene, or circumstance, from which she has drawn her conclusions, or upon which she has based her charge. Neither does the plaintiff describe in any degree, or attempt to describe, any person, place or view which the picture represents or pretends to represent. The plaintiff has not alleged the facts upon which her charge is based, but only her ultimate conclusions. Assuming the allegations to be true, an examination of the complaint does not enable the court to determine whether the defendant was guilty of libel or not. If the showing of the motion picture in question warranted the conclusions of the plaintiff, it must have delineated persons, acts, relations, scenes, and the use of language, or some of these, which were a reflection upon the good character, or the social or business standing of the plaintiff. If so, these could and should have been adequately described. The elements which constitute a disgraceful occurrence may be described as readily from a moving picture screen as though the original transaction had been witnessed. Even more so, because the photoplay may be viewed many times over.

The complaint does not state that the photoplay represented any act, or failure, of the plaintiff, or of any other person, or represented any circumstance, indicating that the plaintiff, or any

member of her family, could not read or write, or was unattractively clothed, or neglectful of the person, or heedless of associations, environment or the respect of others; neither is it alleged that the picture exhibited any act or failure of the plaintiff toward or in relation with her daughter which indicated that the plaintiff was not concerned and anxious about the education and morals of her daughter. And it is not alleged by what act, failure or circumstance the plaintiff was depicted as permitting her daughter to carry on clandestine relations with men, or what those secret relations were.

If language is made the basis of libel, the language must be pleaded. If pictures or other recorded representations of persons, conduct, places and relations are to be made the basis of libel, these should be described with sufficient detail to enable the court to determine that libel has been committed. To draw conclusions, and to reach the determination, are the functions of the court. The court is not free to substitute for its judgment the conclusions of the pleader. Here the plaintiff has charged only the innuendo, as it were, and has entirely omitted any allegations of the facts, or any description thereof that would justify her conclusions.

While it may be that plaintiff's deductions are justified in truth, the complaint furnishes no basis of fact therefor. The complaint should be dismissed as not stating a cause of action, with permission to plead anew.

CRAPSER, J., concurs.

Order affirmed, with ten dollars costs and disbursements.